CLEVENGER, Circuit Judge,
dissenting-in-part.
I respectfully dissent from the majority’s decision to expose Mr. Tudor on remand to further litigation regarding the first charge. As the majority amply demonstrates, Mr. Tudor was acting on his own when initiating investigations or referring investigations for prosecution. However, whether or not Mr. Tudor had actual authority to do so, Mr. Pregozen, the deciding official, testified that he would not have sustained the first charge if Mr. Tudor’s supervisors had condoned his case initiations and referrals, which were reflected in the 4930 forms he signed. Black’s Law Dictionary defines “condone” as “to voluntarily ... overlook.” Black’s Law Dictionary 336 (9th ed. 2009). Merriam-Webster likewise equates overlooking with condoning. See Merriam-Webster’s Online Thesaurus, http://merriamwebster.com/thesaurus/condone (last visited Apr. 19, 2011). Among the many synonyms for “condone” are: “countenance,” “let pass,” “yield or submit to,” “hear of and go along with,” “look the other way,” and “be content with.” See Roget’s International Thesaurus §§ 134.7, 443.10, 978.7 (6th ed. 2001).
The record reveals that DFO Imhoff and Mr. Lacenski gave Mr. Tudor at least some authority to act on his own initiative in consultation with Ms. Taylor. Because Mr. Tudor had no formal approval to sign the 4930 forms, when those forms were annually reviewed by the Dallas office, Mr. Tudor’s activities necessarily came to light, as Mr. Lacenski testified. Moreover, as Mr. Lacenski further testified, despite the numerous occasions on which the Dallas office and headquarters reviewed the 4930 forms that Mr. Tudor signed, nobody voiced any concern about Mr. Lacenski’s delegation of authority to Mr. Tudor. Mr. Tudor testified that both Mr. Lacenski and Ms. Taylor condoned his approval activities. Mr. Lacenski did not contradict Mr. Tudor’s testimony and the agency did not call Ms. Taylor as a witness. Mr. Lacenski testified that he personally did not review the 4930 forms that Mr. Tudor filed, but he testified that Mr. Tudor and Ms. Taylor periodically briefed him about cases that were initiated and prosecuted. Neither the Dallas office nor anyone else reprimanded or took any action to stop Mr. Tudor from what he was doing for a long period of time. Although the precise word “condone” was not used in testimony to describe the reaction of Mr. Tudor’s supervisors to his approval activities, the extensive testimony on the subject taken as a whole proves that the supervisors in fact condoned the conduct covered by the first charge.
Even if there are inconsistencies between Mr. Tudor’s trial testimony and statements he allegedly made to investigators as to whether or how much authority he had been given to initiate or refer cases, there is no challenge to Mr. Tudor’s claim that his supervisors condoned his activities.
We should not lose sight of the fact that Mr. Tudor got caught in a trap set for him by his supervisors. Due to the fast-paced and pressing nature of the cases on which Mr. Tudor worked, his supervisors decided, contrary to the “book,” to look the other way and let him initiate and refer *1368 cases, and sign a form when he had no written authority to do so. By every light shown on the record, Mr. Tudor did a fíne job, and for a time must have pleased his supervisors. The fly in the ointment came when Ms. Tucker replaced Ms. Taylor as acting ASAC and Mr. Tudor’s activities became known beyond the ImhoffiLacenski/Taylor orbit. Not surprisingly, a major investigation immediately ensued, with Mr. Tudor as the fall guy. In the end, the deciding official got it just right: even though the agency probably should have made sure Mr. Tudor had no chance to sign the 4930 forms, he should not be punished if his supervisors condoned his activities.
Because Mr. Tudor’s supervisors condoned the activities covered by the first charge, Mr. Tudor cannot be punished under that charge. Thus, the proper course is not to remand the case for further review of the merits of the first charge but, rather, to remand the case to let the agency decide the penalty it wishes to assess for the sustained second charge of unauthorized disclosure of taxpayer information. Mr. Tudor should not be exposed to further litigation on the first charge.
For these reasons, I respectfully dissent, although I too would remand the case, but for a quite different purpose.